Filed 1/21/26  P. v. Gutierrez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SERGIO REYNALDO GUTIERREZ,<br><br>    Defendant and Appellant. | D086345<br><br><br><br>(Super. Ct. No. RIF2103536) |

APPEAL from a judgment of the Superior Court of Riverside County, Timothy J. Hollenhorst, Judge.  Affirmed.

Gene D. Vorobyov, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric. A Swenson, Monique Myers, and Tyler Krentz, Deputy Attorneys General, for Plaintiff and Respondent.

Sergio Reynaldo Gutierrez was found guilty of committing willful, deliberate, and premeditated murder and of personally using a deadly and dangerous weapon in the commission of the murder.  (Pen. Code, §§ 187,

subd. (a), 12202(b)(1).)  On appeal, Gutierrez argues the trial court abused its discretion and violated his due process rights by admitting a photograph showing the victim's nude corpse on the coroner's autopsy table.  But we discern no abuse of discretion, and thus no corresponding due process violation, in the trial court finding the photograph's probative value was not substantially outweighed by the probability it would unduly prejudice Gutierrez.  We therefore affirm.

## I.

### A.

Gutierrez's truck was stolen.  At one point, he believed Benedicto Salanga Jr. stole his truck.  When Gutierrez confronted him, however, Salanga denied the theft.  Gutierrez claimed he later suspected another individual of being the culprit.

Gutierrez eventually found his truck "almost gutted out" and abandoned in a river bottom.  While driving home in his retrieved truck, Gutierrez spotted Salanga and his friend walking on the opposite side of a road.  According to Gutierrez, he gestured a peace sign at them.  But Salanga's friend testified that Gutierrez flashed them his middle finger.

Gutierrez then made a U-turn to drive alongside Salanga and his friend.  Gutierrez alleged he looked down from the road to adjust his radio and move tools from the passenger seat; when he looked up, it was too late to avoid hitting Salanga with his truck.  Gutierrez fled the scene.  Paramedics transported Salanga to the hospital.  He passed away, and the cause of death was determined to be multiple blunt force injuries.

### B.

The People charged Gutierrez with Salanga's murder.  Gutierrez pled not guilty.

2

Before trial, Gutierrez moved to exclude "gruesome photographs," including from Salanga's autopsy, under Evidence Code section 352 and federal due process rights. The trial court tabled the motion to allow the parties to review the photographs and determine if any disagreement existed. At trial, Gutierrez renewed his objection, on the same grounds, to a photograph of Salanga's nude body on an autopsy table that we will call the Autopsy Exhibit. The Autopsy Exhibit shows no blood, though a suture is visible running from Salanga's sternum to groin.

The court overruled Gutierrez's objection and admitted the Autopsy Exhibit. The court noted the Autopsy Exhibit is "about an average photograph" compared to the "many" autopsy photographs the court had seen. It found the Autopsy Exhibit's probative value for the purpose of identifying Salanga's body was not substantially outweighed by its admittedly prejudicial effect. The court directed the People to display the Autopsy Exhibit during trial briefly, only as long as needed for the pathologist who performed the autopsy to identify Salanga.

The court also determined admitting the Autopsy Exhibit did not violate Gutierrez's due process rights. The court noted the inherently graphic nature of murder cases and recognized the People chose the Autopsy Exhibit—not merely for shock value—after reviewing more graphic photographs of Salanga's autopsy.

## C.

The jury found Gutierrez guilty of committing willful, deliberate, and premeditated murder and of personally using a deadly and dangerous weapon in the commission of the murder. The court sentenced Gutierrez to a determinate sentence of one year plus an indeterminate sentence of 25 years to life in prison.

3

## II.

Gutierrez argues the trial court abused its discretion by overruling his Evidence Code section 352 and federal due process objections to admitting the Autopsy Exhibit.  We disagree.

## A.

Gutierrez challenges the trial court's section 352 analysis because he asserts Salanga's identity was not a material disputed issue at trial.  He contends the Autopsy Exhibit did not help the jury decide what he deems the "key" disputes: whether Salanga died by accident or by murder and what degree of murder.  The People counter the Autopsy Exhibit had probative value because it helped the pathologist identify Salanga's corpse and testify on the issue of Salanga's cause of death.  We agree with the People.

A trial court has discretion to admit evidence if its probative value is not substantially outweighed by the probability that its admission will create substantial danger of undue prejudice.  (Evid. Code, § 352.)  "The chief elements of probative value are relevance, materiality and necessity."  (*People v. Schader* (1969) 71 Cal.2d 761, 774.)

"We review the trial court's decision to admit photographs under Evidence Code section 352 for abuse of discretion."  (*People v. Peoples* (2016) 62 Cal.4th 718, 748.)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Here, the trial court conducted the balancing section 352 demands.  It first determined the Autopsy Exhibit's probative value was "certainly substantial" because it would allow the pathologist who performed Salanga's autopsy to identify his corpse.  And identifying Salanga formed part of the pathologist's explanation of the cause of death.  Gutierrez's "not guilty plea

put in issue all of the elements of the charged offenses." (*People v. Cowan* (2010) 50 Cal.4th 401, 476.) Because a killing is an element of the murder charge against Gutierrez (see CALCRIM Nos. 500, 520), the Autopsy Exhibit helped determine a material issue and thus had probative value.

The trial court then expressly weighed the Autopsy Exhibit's probative value against its prejudicial effect. "'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.'" (*People v. Karis* (1988) 46 Cal.3d 612, 638.) "'In applying section 352, "prejudicial" is not synonymous with "damaging."'" (*Ibid.*) Here, the trial court acknowledged the Autopsy Exhibit's "shock value," called it "inflammatory," and accepted it would produce "some prejudicial effect" against Gutierrez.

But "some" prejudicial effect does not make the Autopsy Exhibit rise to the level of unduly prejudicial. "'[V]ictim photographs and other graphic items of evidence in murder cases always are disturbing.'" (*People v. Scheid* (1997) 16 Cal.4th 1, 19.) Even so, some photographs are less disturbing than others. In *Scheid*, our high court held that a photograph showing two shooting victims face down from a distance, though "unpleasant," was not "unduly gory or inflammatory." (*Ibid.*) It reasoned the photograph displayed neither a close-up view of the victim's wounds nor a "revolting portraiture" of facial expressions that could inflame a jury, and the prosecutor did not "unduly belabor[]" the issue, instead keeping questioning about the photograph "brief." (*Id.* at pp. 19–20.) So too here.

Similar to *Scheid*, the Autopsy Exhibit does not show a close-up view of Salanga's injuries or any shocking facial expression. Indeed, the court noted it was "about an average photograph . . . in terms of what to expect to see at

5

the coroner's office" when considering the "many" autopsy photographs the court had seen. Gutierrez accuses the court of having "defaulted to how it typically resolves" such admissibility issues rather than engaging in the "individualized balancing of factors required." We disagree. "Of course, the question of prejudice ultimately depends on what *this* jury was shown—not on what the trial court has seen in other cases or what the prosecution in this case could have, but did not offer into evidence." (*People v. Allen* (1986) 42 Cal.3d 1222, 1258, fn. 13.) "The trial judge's experience in other cases, however, is relevant to [the judge's] ability to assess how a jury is likely to respond to photographs of this nature." (*Ibid.*) And the "fact that there were other more gruesome photographs that the prosecution did not offer into evidence lends credence to . . . the court's determination that the photographs were, in fact, helpful." (*Ibid.*) Here, the court considered the specific Autopsy Exhibit and deemed it average based on the court's experience in other cases. It did not err in doing so. And as in *Allen*, the prosecution "sift[ed] through what appears to be a large quantity of autopsy photographs" to "pick[] one that is less shocking than other photographs," which supports the court's section 352 determination.

In addition, the People showed the Autopsy Exhibit briefly during trial while the pathologist testified. Gutierrez argues the People's "insistence that the use of this photograph was brief is speculative" because the record "does not show when the photograph was removed" and the Autopsy Exhibit was available to the jury during deliberations. But we can infer from the record— the prosecutor telling the pathologist she would show the Autopsy Exhibit "briefly" and, after asking three questions, turning the pathologist's attention "back to" another exhibit—that the Autopsy Exhibit was not displayed long during trial. On the other hand, Gutierrez's assertion that "the jury may

6

have seen this . . . exhibit for a long time" because it was available during deliberations is speculative. Besides, after the court explained it would "[t]ypically" allow the photograph to be shown for identification purposes and then "quickly removed" after "several seconds," it asked whether defense counsel "wish[ed] to be heard further" regarding the section 352 analysis. Defense counsel said, "No"—without objecting or asking for the Autopsy Exhibit to be excluded from the jury room during deliberations. As a result, any argument related to the Autopsy Exhibit being available to the jury during deliberations is forfeited. (See *People v. Scott* (1994) 9 Cal.4th 331, 354.)

In sum, we discern no abuse of discretion by the trial court determining the Autopsy Exhibit's probative value was not substantially outweighed by the probability that its admission would unduly prejudice Gutierrez.

Gutierrez relies on *People v. Poggi* (1988) 45 Cal.3d 306, to argue the Autopsy Exhibit lacked probative value, but *Poggi* is distinguishable. In *Poggi*, the trial court admitted an autopsy photograph of a murder victim over the defendant's objection. (*Id.* at pp. 322–323.) Our high court ruled that the trial court erred by admitting the photograph because the defendant had offered to stipulate that the victim had died, which meant the victim's death was no longer a disputed material issue. (*Id.* at p. 323.) As a result of the defendant's offered stipulation, the photograph lost its probative value. (*Ibid.*) Here, in contrast, Gutierrez made no such offer to stipulate. Indeed, the record indicates the People proposed a stipulation regarding Salanga's cause of death, but the parties "were not able to come to an agreement" on it. Thus, *Poggi* does not assist Gutierrez.

Gutierrez also points to *People v. Winn* (2020) 44 Cal.App.5th 859, as an example of a court "express[ing] concern about admission of the

7

photograph because it was not material to any of the disputed issues at trial."
(Citing *id.* at p. 867.)  But *Winn*'s concern stemmed in part from the
prosecutor using the photograph for a purpose other than that for which the
court admitted it, which Gutierrez does not claim here.  (*Ibid.*)  And, as the
People note, *Winn* did not expressly rule on the issue of error because it
determined no prejudice flowed from the photograph's admission.  (*Id.* at
pp. 866–867.)  As a result, we do not find *Winn* persuasive on the issue before
us.

Because we conclude the trial court did not err in admitting the
Autopsy Exhibit, we need not reach Gutierrez's prejudice argument.

B.

Gutierrez argues admitting the Autopsy Exhibit rendered his trial
fundamentally unfair because it failed to help the jury decide any material
disputed issue and "was used to unfairly prey on the jury's emotions."  But
this federal constitutional due process rights claim depends on Gutierrez's
same argument that the Autopsy Exhibit lacked any probative value as
under the section 352 analysis.  It thus fails for the same reason.  "Because
the trial court did not abuse its discretion in finding the photographs relevant
and not unduly prejudicial, there was no violation of [Gutierrez]'s
constitutional rights." (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 472.)

### III.

We affirm the judgment.

CASTILLO, J.

WE CONCUR:

IRION, Acting P. J.

DATO, J.